UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL T. HAYES,<br><br>                    Plaintiff,<br><br>        v.<br><br>CORIZON; IDAHO DEPARTMENT OF CORRECTION; RONA SIEGERT; SGT. BARROWS; C/O ANDERSON; RN VERONICA EVANCHO; NURSE TIMMERMANS; and 6 JANE DOES,<br><br>                    Defendants. | Case No. 1:21-cv-00362-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff's complaint as a result of Plaintiff's status as an inmate. Plaintiff later filed an amended complaint and a motion for summary judgment. Plaintiff has now withdrawn both the amended complaint and the motion and has filed a Second Amended Complaint ("SAC"). *See* Dkts. 13, 15.

The Court now reviews the SAC to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. § 1915A. Having done so, the Court enters the following Order permitting some of Plaintiff's claims to proceed.

**REVIEW OF SECOND AMENDED COMPLAINT**

1.     **Pleading Standards and Screening Requirement**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under modern pleading standards, Rule 8 requires a complaint to "contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The *Iqbal*/*Twombly* "facial plausibility" standard is met when a complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted).

If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id*. at 678, 682 (internal quotation marks omitted). Bare allegations that amount to a mere restatement of the elements of a cause of action, without adequate factual support, are not enough.

The Prison Litigation Reform Act ("PLRA")[1] requires that the Court review complaints filed by prisoners seeking relief against a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A. The Court must dismiss any claims that do not have adequate factual support or are frivolous or malicious. *Id*.

The Court also must dismiss claims that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. *Id*. These last two categories—together with claims that fall outside a federal court's narrow grant of jurisdiction—encompass those claims that might, or might not, have

---

[1] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

INITIAL REVIEW ORDER BY SCREENING JUDGE - 2

factual support but nevertheless are barred by a well-established legal rule.

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).[2]

A court is not required to comb through a plaintiff's exhibits or other filings to determine if the complaint states a plausible claim. Therefore, in its review under § 1915A, the Court has reviewed only the Second Amended Complaint found at Docket No. 15, not any affidavits or exhibits that Plaintiff has submitted. *See* General Order 342, *In Re: Procedural Rules for Prisoner Civil Case Filings and for Prisoner E-Filing Program*, § A(1)(b)-(c) ("No exhibits may be attached to a complaint or any type of amended complaint, except those showing exhaustion of administrative remedies[,] [and] [n]o affidavits may be attached to a complaint or any type of amended complaint.").

## 2.    Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho Maximum Security Institution. Plaintiff

---

[2] Rule 12(b)(6) authority to dismiss claims as explained in *Jackson* was expanded by the PLRA, giving courts power to dismiss deficient claims sua sponte, either before or after opportunity to amend. *See Lopez*, 203 F.3d at 1130.

asserts that he has been denied adequate medical treatment in prison.

Plaintiff suffers from degenerative disc disease and arthritis in his spine, which causes him significant and constant pain. In the early 2000s, evidently while Plaintiff was not in prison, he had been prescribed hydrocodone, a narcotic opioid pain medication. Plaintiff had been taking four 10/325 mg tablets of hydrocodone per day for his chronic pain.[3] *SAC*, Dkt. 15, at 14–15. On an unknown date, unidentified Corizon medical staff "reduced [Plaintiff's] pain medication to ibuprofen." *Id*. at 15. Plaintiff remained on ibuprofen for some time, but eventually had to stop taking it because it was adversely affecting his liver. Plaintiff now is unable to take any NSAID pain reliever, though it is unclear what pain medication Plaintiff is currently taking.[4]

On several occasions in the past two years, Corizon staff members allegedly have "refused to give [Plaintiff] any of [his] pain medication." *Id*.

Plaintiff also states that he has run out of his pain medication multiple times. *Id*. at 7–9, 15–16. Even though Plaintiff submitted numerous requests for refills before he ran out, those refills were frequently delayed, leaving Plaintiff without pain medication for up to 20 days at a time.

Plaintiff also alleges that, on February 22, 2021, he "declared a medical emergency," having been out of his pain medication for 19 days. *Id*. at 11. Plaintiff declared this emergency to C/O Anderson. Though Anderson initially responded by telling Plaintiff,

---

[3] The dosage for the narcotic drug is listed first, followed by the dosage of the non-narcotic medication in the tablet. Therefore, a 10/325 tablet would contain 10 mg of hydrocodone and 325 mg of acetaminophen.

[4] NSAIDs are non-steroidal anti-inflammatory drugs, one of which is ibuprofen. Non-NSAID pain relievers include aspirin and acetaminophen.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 4

"That ain't happening," she then told Plaintiff she "would call medical and have them come to [Plaintiff's] cell and see [him]." *Id*. at 11–12. Medical staff did not come to check on Plaintiff.

Plaintiff submitted a concern form to Sergeant Barrows about the failure of medical staff to respond to Plaintiff's declared emergency. Barrows responded, "I will look into this." *Id*. at 12. The result of Barrows's investigation is unclear.

Plaintiff does not identify any specific treating medical provider as a defendant in this action. Instead, Plaintiff names the following defendants: (1) the IDOC; (2) Corizon, the private entity providing Idaho inmates with medical care under contract with the IDOC; (3) IDOC employees Rona Siegert, Sgt. Barrows, and C/O Anderson; and (4) Corizon employees Veronica Evancho and Nurse Timmermans, who, it appears, supervise the provision of medical treatment and may have responded to Plaintiff's grievances about his medical care. Plaintiff seeks monetary, injunctive, and declaratory relief. *Id*. at 18–19.

**3.      Standards of Law Governing Plaintiff's Claims**

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable

person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct, *Taylor*, 880 F.2d at 1045, and a defendant whose only role in a constitutional violation involved the denial of an administrative grievance cannot be held liable under § 1983, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

To bring a § 1983 claim against a local governmental entity or a private entity

performing a government function—such as Corizon—a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). An entity also "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority" or when "such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011). Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations— including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

Plaintiff asserts his § 1983 claims under the Eighth Amendment, which protects prisoners against cruel and unusual punishments.[5] *SAC* at 16–17. To state a claim under

---

[5] Plaintiff also refers nominally to "retaliation," but does not assert it as an independent claim. *See SAC* at 8 ("Corizon medical staff is in fact retaliating against [Plaintiff] by the deliberate failure to administer prescribed medication…"), 16–17 (asserting only "deliberate indifference" claims under the Eighth Amendment). Even if Plaintiff intended to assert such a claim, however, his generalized accusation of retaliatory motivation is insufficient to state a plausible retaliation claim under the First Amendment. *See*

the Eighth Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy

---

*Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985) (noting that "bare allegations of arbitrary retaliation" are insufficient to support a retaliation claim).

of comment or treatment; the presence of a medical condition
that significantly affects an individual's daily activities; or the
existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted),

*overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en

banc).

As to the subjective standard, "deliberate indifference entails something more than

mere negligence, [but] is satisfied by something less than acts or omissions for the very

purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at

835. A prison official or prison medical provider acts with deliberate indifference "only if

the [prison official or provider] knows of and disregards an excessive risk to inmate health

and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal

quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*,

833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not

only 'be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*,

391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors

in their response to the prisoner's needs or by prison guards in intentionally denying or

delaying access to medical care or intentionally interfering with the treatment once

prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). Medical malpractice or

negligence does not support a cause of action under the Eighth Amendment, *Broughton v.*

*Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical

treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials or medical providers who *did* know of a substantial risk to an inmate's health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

"There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted). Accordingly, mere differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 11

"[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must prove that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). To violate the Eighth Amendment, the choice of treatment must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998); *see also Lamb v. Norwood*, 895 F.3d 756, 760 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

A court's review of a prison medical provider's choice of treatment must be especially deferential where the issue is pain medication or narcotics. In such cases, the court "is asked to pass judgment on the attempts by prison medical staff to navigate between" the risk of "debilitating pain" and the competing risk of addiction. *Baker v. Stevenson*, 605 F. App'x 514, 519 (6th Cir. 2015) (unpublished). Where a prison medical provider believes in good faith that a certain course of pain treatment might "create or enable" a risk of addiction, the provider's decision not to provide that treatment "cannot be

considered an act of deliberate indifference." *Id*. The Constitution "does not impose a constitutional obligation upon prison officials" or prison medical providers "to enable a prisoner's substance abuse or addiction problem." *Id*. at 518.

Where claims are asserted against persons who supervise the provision of prison medical care, the question is not whether the supervisor was "directly involved" in the plaintiff's treatment. *Gonzalez v. Ahmed*, 67 F. Supp. 3d 1145, 1156 (N.D. Cal. 2014). Instead, the question is whether the Complaint plausibly alleges that the supervisor knowingly failed to address a treating provider's deficient care, thereby interfering with the plaintiff's medical treatment. *Id*.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

## 4. Discussion

The Second Amended Complaint, liberally construed, appears to state a colorable § 1983 claim against Corizon for delaying refills of Plaintiff's pain medication. As explained below, however, his other claims are implausible and must be dismissed.

### A. *Claims against the IDOC*

As an initial matter, all claims against the IDOC are implausible because the IDOC, as a state entity, is not considered a "person" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Even if the IDOC were a "person," however, it would be immune from suit in federal court under the Eleventh Amendment. *See Hans*

*v. Louisiana*, 134 U.S. 1, 16–18 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Quern v. Jordan*, 440 U.S. 332, 342–44 (1979) (section 1983 does not waive state sovereign immunity). *Esquibel v. Idaho*, No. 1:11-cv-00606-BLW, 2012 WL 1410105, at *6 (D. Idaho Apr. 23, 2012) (the State of Idaho has not waived sovereign immunity for constitutional claims). Therefore, the Court will dismiss Plaintiff's claims against the IDOC.

### B.   *Claims Based on Medication Refill Delays*

Plaintiff alleges that numerous unidentified medical personnel failed, on multiple occasions, to ensure that Plaintiff's medication was refilled in a timely manner. Plaintiff sent numerous requests ahead of time, attempting to obtain that medication, to no avail. As a result, Plaintiff had to go without his medication several times for up to 20 days. The alleged consistent failure of medical staff to respond to Plaintiff's multiple requests gives rise to a plausible inference that Corizon has a custom or practice of failing to timely refill inmates' prescribed medication.

However, the SAC does not state plausible claims regarding medication refills against the other Defendants. Plaintiff's only allegations against Defendant Siegert, the IDOC Health Services Director, are that she had "the responsibility to see to it that all inmates receive adequate medical care" and that she has not properly monitored Corizon's provision of medical care.

These vague allegations of Siegert's involvement are insufficient to plausibly suggest "a sufficient causal connection" between any particular action on Siegert's part and the delayed medication refills. *Starr*, 652 F.3d at 1207. That Siegert may have been

involved in the grievance process does not itself support a reasonable inference that she knowingly failed to address a treating provider's deficient medical care. *See Gonzalez*, 67 F. Supp. 3d at 1156.

Plaintiff alleges that Defendants Evancho and Timmermans also had supervisory responsibility to ensure adequate medical care for inmates—an allegation that does not plausibly suggest a causal connection so as to render these Defendants liable under § 1983. *See Starr*, 652 F.3d at 1207. Though the SAC includes a conclusory allegation that Evancho and Timmermans "refused the Plaintiff pain medication," the SAC contains no other facts or details surrounding the alleged denials of medication. *See SAC* at 5. Therefore, Plaintiff's claims based on these Defendants' alleged denial of medication do not have sufficient factual support, nor does the SAC plausibly suggest that the denials were the result of deliberate indifference. And, as with Defendant Siegert, the fact that Defendants Evancho and Timmermans may have responded to Plaintiff's grievances does not plausibly suggest that they knowingly failed to address a medical provider's deficient treatment. *See Gonzalez*, 67 F. Supp. 3d at 1156.

## C.    *Claims Based on Changes in Pain Medication*

Plaintiff claims that, on an unknown date, unidentified Corizon providers took him off of hydrocodone and placed him on ibuprofen instead. Plaintiff also claims that the ibuprofen damaged his liver.

These allegations fail to state a plausible claim that Corizon has a policy or custom amounting to deliberate indifference. The "obvious alternative explanation," *Iqbal*, 556 U.S. at 682, is that Plaintiff's individual medical providers made independent medical

judgments that continuing Plaintiff on an opioid pain medication—with the attendant risks of addiction—was not the best way to manage Plaintiff's pain. *See Baker*, 605 F. App'x at 519 ("Efforts to wean a prisoner off opiate or narcotic pain medication to which he has become addicted are not an unconstitutional form of punishment but a medical judgment that the long-term harms of addiction and abuse outweigh the short-term benefits of reduced subjective pain."). Nothing in the SAC suggests that Corizon had a policy of keeping inmates on dangerous medications until the suffer damage from those medication. Therefore, the SAC fails to state a plausible claim against Corizon based on providers' choices between prescription medication.

### D.    Claims Based on Plaintiff's Declared Emergency on February 22, 2021

Finally, Plaintiff asserts prison officials and Corizon staff did not adequately respond when he told C/O Anderson that his pain constituted an emergency. However, the SAC does not plausibly suggest that any Defendant acted with deliberate indifference. Anderson told Plaintiff she would call medical, and there is no indication that Anderson failed to do so. Sgt. Barrows, who acted only to respond to Plaintiff's grievance on the issue, did not contribute in any way to the failure of medical to initially respond. *See Taylor*, 880 F.2d at 1045; *Shehee*, 199 F.3d at 300.

Neither does the SAC plausibly suggest that Corizon had a policy or custom of not responding to emergency calls. Instead, the "obvious alternative explanation" is that the individuals on the emergency response team on that particular day failed to respond for some unknown reason. *See Iqbal*, 556 U.S. at 682. Therefore, Plaintiff has not stated a plausible Eighth Amendment claim based on the "declared … medical emergency" on

February 22, 2021. *See SAC* at 11–12.

### E.    *Doe Defendants*

Plaintiff names six "Jane Doe" defendants. Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint, but later can be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe defendants comes to light during discovery, Plaintiff may move to amend his Complaint to assert claims against those defendants.

## CONCLUSION

Plaintiff may proceed as outlined above. This Order does not guarantee that any of Plaintiff's claims will be successful. Rather, it merely finds that some are plausible—meaning they will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[6] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more

---

[6] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the SAC under § 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to § 1915A and may be filed only in extraordinary circumstances.

appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

Plaintiff will be responsible for serving a summons and the SAC upon Defendants by formal service of process or by obtaining signed waivers of service of summons from each Defendant or their counsel. Plaintiff must do so within 90 days. If he does not, his claims against any unserved Defendants will be dismissed without prejudice, after notice to Plaintiff. *See* Fed. R. Civ. P. 4(m).

## ORDER

**IT IS ORDERED:**

1.    Plaintiff's Motion to Review the Second Amended Complaint (Dkt. 14) is GRANTED IN PART, to the extent the Court has screened the SAC (Dkt. 15) as required by § 1915A.

2.    Plaintiff's Motion to Review the First Amended Complaint (Dkt. 9) is MOOT.

3.    Plaintiff's Motions for Judicial Notice (Dkts. 5 & 6) are DENIED. The allegations in these Motions are not the type of facts appropriately subject to judicial notice. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

4.    Plaintiff may proceed on Eighth Amendment claims, against Defendant

Corizon, based on the failure to ensure timely refills of Plaintiff's pain medication. All other claims against all other Defendants are DISMISSED, and Defendants IDOC, Siegert, Barrows, Anderson, Evancho, and Timmermans are TERMINATED as parties to this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to further amend the complaint to assert such claims.[7]

5.     Within 90 days after entry of this Order, Plaintiff must obtain a waiver of service from, or effect formal service of process of the Complaint upon, Defendant Corizon. Plaintiff is advised that service and waiver are governed by Rule 4 of the Federal Rules of Civil Procedure.

6.     The Clerk of Court will provide Plaintiff with (a) one issued summons for service of process upon Defendant Corizon; and (b) one copy of the Notice of a Lawsuit and Request to Waive Service of Summons. If Defendant Corizon does not waive service, Plaintiff alone is responsible for effecting formal service of process.

7.     The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases,

---

[7] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

issued with this Order.

8.    Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

9.    Dispositive motions must be filed by the later of (a) 300 days after entry of this Order or (b) 300 days after entry of an order denying all or part of a preliminary Rule 12(b) or Rule 56 motion.

10.   Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

11.   The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

12.   All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion,

served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

13.   No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

14.   Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

15.   Pursuant to General Order 324, this action is hereby RETURNED to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: January 5, 2022

David C. Nye
Chief U.S. District Court Judge